UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11144-GAO

STEPHEN D. KNOX AND JEAN KNOX,
Plaintiffs,

v.

METALFORMING, INC., and SCHECHTL MASCHINENBAU GMBH,
Defendants,

and

METALFORMING, INC.,
Third-Party Plaintiff,

v.

SCHECHTL MASCHINENBAU GMBH,
Third-Party Defendant.

OPINION AND ORDER
March 30, 2018

O'TOOLE, D.J.

The plaintiff, Stephen D. Knox, injured his hand when his foot inadvertently activated a switch on an allegedly defective metal folding machine. The machine was manufactured by the defendant, Schechtl Maschinenbau GmbH, and distributed by co-defendant MetalForming, Inc. Knox and his wife Jean assert claims against both defendants for negligence, breach of warranty, loss of consortium, and violation of Massachusetts General Laws Chapter 93A. MetalForming filed crossclaims against Schechtl for indemnification, contribution, and breach of contract. Pending before the Court is Schechtl's motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction. Both Knox and MetalForming have opposed Schechtl's motion to dismiss.

**I.     Legal Standard**

The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citations omitted). Under the commonly applied prima facie standard of review, a court takes the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [the plaintiff's] jurisdictional claim." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A court may also consider any uncontradicted facts presented by the defendant. Mass. Sch. of Law, 142 F.3d at 34.

**II.    Facts Considered**

MetalForming, a Georgia-based company, and Schechtl, a German company, entered into a Distributor Agreement in May 1998. (Mem. of Law in Supp. of Def. Schechtl Maschinenbau GMBH's Mot. to Dismiss, Ex. A ¶ 5 (dkt. no. 22-1); see id. Ex. 1 [hereinafter "Distrib. Agreement"] (dkt. no. 22-2).) Schechtl manufactures heavy industrial equipment for folding and cutting metal parts used in construction projects. The Agreement granted MetalForming the right to function as the exclusive independent distributor of Schechtl's products in the territory comprising Canada, the United States, and Mexico (designated the "Contract Territory"). (Distrib. Agreement at 2.) The Agreement stipulated that MetalForming would "distribute the Products as an independent distributor in its own name and on its own account." (Id. at 1.) During the term of the Agreement, Schechtl was excluded from directly selling its products within the Contract Territory without MetalForming's consent. (Id. at 2.)

The procedure the parties followed with respect to the sale of any machinery was outlined in the Agreement. After locating a prospective purchaser of a Schechtl product, MetalForming would send a purchase order to Schechtl in Germany. If Schechtl accepted the order, it would issue a written order confirmation. Under the Agreement, MetalForming would take ownership of the

machine in Germany. (Id. at 3.) MetalForming was responsible for the installation of the machine at the purchaser's site, as well as the training of the purchaser's personnel in the proper use of the machine. MetalForming also agreed to maintain "a spare part service" for the machine. (Id. at 6.) MetalForming further undertook "to provide any and all warranty services for the Products at its expense." (Id. at 5.)

MetalForming was responsible for marketing and promoting the sale of Schechtl products in the Contract Territory, and to facilitate those activities it received ongoing information "concerning products, markets, competition, [and] prices" from Schechtl. (Id. at 2.) Some sample marketing materials submitted by MetalForming appear to have been prepared by Schechtl. In the sample provided both companies' logos are displayed on various pages, but the contact information provided is for MetalForming. (See Opp'n of Def. MetalForming, Inc. to Co-Def. Schechtl Maschinenbau GMBH's Mot. to Dismiss, Ex. 8 at 1–61 (dkt. no. 30-3).)

Between 2000 and September 2017, MetalForming sold 2,639 Schechtl sheet metal machines throughout the United States at a value of just over $97 million. In Massachusetts specifically, MetalForming sold 45 Schechtl machines and 234 Schechtl parts at a value of nearly $1.5 million between July 2001 and September 2017. (Id. Ex. 6 ¶¶ 16–17 (dkt. no. 30-1).)

Schechtl sold the particular machine at issue to MetalForming pursuant to a purchase order dated April 20, 2001. In August 2001, MetalForming sold and delivered the machine to Cape Cod Copper, Knox's employer in Massachusetts. (Id. ¶ 15.) The respective purchase orders are in the record. They indicate that MetalForming purchased the machine from Schechtl for $25,830, (id. Ex. 9 (dkt. no. 30-3)), and sold it to Cape Cod Copper for $38,950, (Opp'n of Pls., Stephen D. Knox and Jean Knox, to Def., Schechtl Maschinenbau GMBH's Mot. to Dismiss, Ex. 4 (dkt. no. 29-1)).

Schechtl has never owned or leased real or personal property in the Commonwealth. As noted above, Schechtl does not itself directly solicit business from customers in Massachusetts. It has never employed any agents or representatives in Massachusetts, and has never maintained offices, telephone listings, or bank accounts in Massachusetts. (See Schechtl's Mem. of Law, Ex. A.)

### III. Discussion

Personal jurisdiction over a defendant may be exercised if the forum State has a long-arm statute that purports to grant jurisdiction over the defendant and if the exercise of jurisdiction pursuant to that statute does not violate the Due Process Clause of the Fourteenth Amendment. See, e.g., Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015); see also SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017) ("Because the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." (citations omitted)).

### A. Massachusetts Long-Arm Statute

The Massachusetts long-arm statute permits the exercise of jurisdiction over a non-resident defendant in several enumerated circumstances. See Mass. Gen. Laws ch. 223A, § 3. Section 3(d) authorizes personal jurisdiction over a person who "cause[s] tortious injury in [the] commonwealth by an act or omission outside [the] commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [the] commonwealth."

Here, the requirements of subsection (d) have easily been satisfied. Knox alleges that Schechtl's product, although manufactured in Germany, caused tortious injury to him in

4

Massachusetts. At least in the circumstances of this case, revenues from indirect sales through an independent intermediary like MetalForming count as having been "derived" from the sale of machines in Massachusetts. See Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG., 522 N.E.2d 989, 991–94 (Mass. App. Ct. 1988) (holding the substantial revenue requirement was met despite the fact the defendant, a West German corporation, sold its machines to a Swiss corporation, which in turn, sold the machines to the exclusive United States distributor of defendant's products). The amount of revenues alleged in this case is sufficiently "substantial" for purposes of § 3(d). See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 219 (1st Cir. 1989) (finding $15,000 sale of products was sufficient) (citation omitted).

B.    Due Process

The exercise of in personam jurisdiction over a non-resident defendant must be consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. In brief, the defendant must "have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); accord Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016). In cases like this one where the defendant is not "at home" in the forum State, see BNSF Ry. Co. v. Tyrrell, 137 S.Ct. 1549, 1558 (2017), the First Circuit requires a three-part analysis to determine whether a defendant has the requisite minimum contacts with a forum so that it may be lawfully subjected to specific personal jurisdiction there. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The three aspects of this specific jurisdiction analysis are relatedness, purposeful availment, and overall reasonableness. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008). The second factor, purposeful availment, is decisive here.

5

A foreign defendant's contacts with the forum State "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec., Radio & Mach. Workers, 960 F.2d at 1089. In a products liability case like this, "it is the defendant's purposeful availment that makes jurisdiction consistent with 'fair play and substantial justice' notions." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880 (2011) (plurality opinion).

The plaintiffs here have failed to establish Schechtl's purposeful availment of the privilege of conducting activities in Massachusetts. The facts in J. McIntyre pertinent to the question of personal jurisdiction are very similar to the facts of this case. J. McIntyre Machinery, Ltd., a manufacturer in England, sold a machine to an Ohio-based company that served as the exclusive, independent distributor of the manufacturer's products in the United States. The distributor sold one of the manufacturer's machines to a company in New Jersey. The plaintiff in the case, an employee of the New Jersey company, was injured using the machine. Apart from its relationship with the distributor, the English manufacturer had few contacts with the United States, and, crucially, none with New Jersey except for the presence of a small number of its machines in that State.[1]

In the present case, the pattern of relationships is the same; a European manufacturer sold a machine to an exclusive, independent distributor in the United States, which in turn sold it to an end user, an employee of which was injured using the machine. The only potentially significant factual difference between the two cases is that whereas in J. McIntyre the distributor had sold very few machines in New Jersey, in this case the distributor has sold many Schechtl machines

---

[1] The record is unclear, but no more than four and perhaps only one machine had been sold in New Jersey. Id. at 878.

over the years to customers in Massachusetts, and the revenue "derived" by Schechtl from those sales was "substantial" for state law purposes. If that factual difference between the two cases is significant for the constitutional analysis, then J. McIntyre may be distinguishable. On the other hand, if the factual difference is not significant for the constitutional analysis, then the outcome in J. McIntyre controls the outcome here.

The volume of MetalForming's sales of Schechtl machines in Massachusetts and the indirect revenue to Schechtl from those sales are not significant factors in assessing "purposeful availment" because those sales were solicited not by the nonresident manufacturer but by the independent U.S. distributor. In this case as in J. McIntyre, under the parties' Agreement it was the distributor, and not the manufacturer, that controlled where machines would be sold in the United States and thus made the important decision whether to avail itself of the opportunity to do business in any particular State. There is no question that Schechtl intended to sell its machines through MetalForming to ultimate buyers located in the United States generally. But, as Justice Breyer pointed out in his concurrence in J. McIntyre, knowing that its products *might* be sold in a particular State through a national distributor is not, standing alone, enough to justify the exercise of jurisdiction over the manufacturer by that State. Id. at 890–91 (Breyer, J., concurring). Announcing the judgment of the Court, Justice Kennedy made a similar point:

> The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

Id. at 882. Both opinions recognized that something more than simply a company's release of its products into the "stream of commerce" was needed to support personal jurisdiction in a foreign forum. See id. at 882–83; id. at 891 (Breyer, J., concurring).

"The main ingredients of purposeful availment are voluntariness and foreseeability." Baskin-Robbins, 825 F.3d at 36 (citation omitted). A defendant's contacts with the forum state must be voluntary—that is, they must "proximately result from actions by the defendant *himself*." Phillips, 530 F.3d at 28 (emphasis in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); see also Walden v. Fiore, 134 S.Ct. 1115, 1122 (2014). As the Court had originally put it when it articulated the requirement of "purposeful availment,"

> it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Hanson v. Denckla, 357 U.S. 235, 253 (1958) (emphasis added) (citation omitted). Purposeful availment cannot be premised on the "unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)); see also Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). The contacts with a State that may justify jurisdiction over a nonresident must be those established by the nonresident defendant itself, because "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." Walden, 134 S. Ct. at 1122 (citation omitted).

The foreseeability necessary for the assertion of jurisdiction is not just the foreseeability that another party might—or even likely will—sell the nonresident's products in a particular State, but importantly is rather the foreseeability to the defendant that its own actions may provide a valid basis—the necessary "minimum contacts"—to subject it to the forum's laws and judicial authority.

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also J. McIntyre, 564 U.S. at 883; id. at 891 (Breyer, J., concurring).

A nonresident manufacturer that sells through a national distributor might voluntarily and foreseeably subject itself to the jurisdiction of a particular State if there were some "plus" factor(s) that signaled an intention on the part of the manufacturer that the distributor should target buyers within that State. See J. McIntyre, 564 U.S. at 884, 886; id. at 891–92 (Breyer, J., concurring). For example, the necessary "plus" or "something more" might be "special state-related design, advertising, advice, marketing," etc. Id. at 889 (Breyer, J., concurring). Where such factors are present, the manufacturer could be found to have signaled to the distributor an intention that the distributor should target a particular State. In such circumstances, the nonresident could be understood to have itself directed its business to the targeted State.

No Massachusetts-specific "plus" factor has been identified in this case. Under the parties' Agreement, MetalForming promised generally "to exert its best efforts to build brand recognition in the Contract Territory for the Company's products and to distribute the Company's products within the Contract Territory and to further the sale of the Company's Products [sic]." (Distrib. Agreement 2.) The Contract Territory was North America. There was no subordinate territory designated for special attention, and certainly not Massachusetts. As noted above, the Agreement provided that MetalForming would "distribute the Products as an independent distributor in its own name and on its own account." (Id. at 1.) By that provision, the parties essentially agreed that Schechtl would not direct MetalForming's activities. There is no evidence in the record that it did direct those activities.

Purposeful availment is not simply transitive. That is, while Schechtl may be subject to personal jurisdiction in Georgia because of its contractual relationship with MetalForming,[2] it does not automatically become subject to a Massachusetts forum simply because MetalForming may lawfully be sued here. There may be circumstances where one defendant's contacts with Massachusetts might be imputed to a different defendant for jurisdictional purposes, such as when the two are joint venturers or one is an agent for the other. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002). No such relationship is inferable on the relevant factual circumstances in this case.

It may be tempting to think that because Schechtl has derived, albeit indirectly, "substantial revenue" from MetalForming's sales of Schechtl equipment to Massachusetts customers, that benefit itself establishes a sufficient relationship with Massachusetts to warrant subjecting Schechtl to the jurisdiction of Massachusetts courts. It is true that derived revenues may be an appropriate factor in resolving the constitutional question if the *manner* of derivation itself supports a conclusion of purposeful availment, which is not the case here.

The guiding precedents are quite clear about this: For there to have been "minimum contacts" with the forum sufficient to support the exercise of personal jurisdiction over a nonresident of the forum State, there must have been (a) contacts (b) as a result of the nonresident's purposeful availment of contact with the forum. From its origin, the test for "minimum contacts" sufficient to justify the exercise of jurisdiction over a nonresident defendant has always been a relational one. See Int'l Shoe, 326 U.S. at 319 (explaining that the Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or

---

[2] By a forum-selection clause in their Agreement, the parties provided that the "court of jurisdiction for all disputes that may arise in connection with this Agreement shall be Traunstein/Germany." (Id. at 8.)

corporate defendant with which the state has no contacts, ties, or relations." (citations omitted)). Tracing back a nonresident defendant's indirect economic benefits to the forum may in some circumstances have relevance to other aspects of the constitutional analysis. For example, it may bear on the reasonableness of the exercise of jurisdiction through consideration of the so-called "Gestalt factors." But it cannot be substituted for the analysis of purposeful availment, which is necessarily relational. J. McIntyre and Walden have made that clear.

    C.    Conclusion

The plaintiffs have failed to demonstrate that Schechtl maintained the required "minimum contacts" with Massachusetts to justify subjecting it to personal jurisdiction in this forum. Although §3(d) of the Massachusetts long-arm statute would authorize it, the exercise of jurisdiction would not comport with due process. Schechtl's products entered the stream of commerce and found their way into Massachusetts via MetalForming's transaction of business here, but the record fails to establish that Schechtl purposefully availed itself of the privilege of conducting business in the State.

## IV. Jurisdictional Discovery

The plaintiffs and MetalForming have both requested the opportunity to conduct jurisdictional discovery. A plaintiff who files suit against a nonresident defendant and who makes a "colorable case for the existence of . . . jurisdiction" may be entitled to jurisdictional discovery. Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001)). In requesting jurisdictional discovery, a plaintiff must "present facts . . . which show why jurisdiction would be found if discovery were permitted." Negrón-Torres, 478 F.3d at 27 (citation omitted). A court, however, retains "broad discretion" to decide whether discovery is necessary. See, e.g., Swiss Am. Bank, 274 F.3d at 626 (quoting Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir.

1992)). Here, the record does not suggest there is good reason to believe that discovery would reveal facts that would alter the analysis described above. In particular, MetalForming, because of its business relationship with Schechtl, appears to be in a position to point out facts concerning that relationship that would, if considered, alter the outcome. Its omission to offer more or different information about possible Schechtl contacts with Massachusetts is a strong indication that such information is not available. The request for jurisdictional discovery is DENIED.

**V.**     **Conclusion**

For the aforementioned reasons, Schechtl's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (dkt. no. 21) is GRANTED.[3] The claims against Schechtl are DISMISSED for lack of personal jurisdiction.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[3] Schechtl has also moved to dismiss MetalForming's crossclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the basis of the forum-selection and choice-of-law provision in the Agreement. In light of its conclusion regarding personal jurisdiction, the Court does not reach that motion.